IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| KATELYN EBNER, PRINCESS MBAMARA, AYOKUNLE ORIYOMI, and BRITTANY PENWELL,<br><br>          Plaintiffs,<br><br>vs.<br><br>COBB COUNTY, through its instrumentality the COBB COUNTY POLICE DEPARTMENT; and OFFICER TRACY CARROLL a.k.a. "T.T." CARROLL, in his individual capacity.<br><br>          Defendants | ）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>）<br>） | Civil Action No.: 1:17-cv-03722-WSD<br><br>**JURY TRIAL DEMANDED** |

## <u>FIRST AMENDED COMPLAINT</u>

### The Nature of the Case

1.      This case seeks to vindicate the Fourth Amendment rights of three

innocent Georgians—Katelyn Ebner, Princess Mbamara, Ayokunle Oriyomi, and

Brittany Penwell —all of whom were falsely arrested, forced to have their blood

drawn, and trapped in a jail cell for hours, simply because a police officer had a

hunch, based on deeply flawed drug-recognition training, that they might have

been smoking marijuana. At no point did the police officer seek to obtain a warrant or suggest that they were endangering public safety. None of the Plaintiffs were under the influence of marijuana, and all tested negative for any cannabinoid metabolites. Nevertheless, the Plaintiffs were arrested and charged with driving under the influence of drugs. Ultimately, all driving under the influence charges against all Plaintiffs were dropped.

2.     All three Plaintiffs now have public arrest records that they will have to explain to schools, landlords, and employers for the rest of their lives.

3.     This action seeks to enforce Plaintiffs' Fourth Amendment rights against unlawful seizures pursuant to 42 § U.S.C. 1983, in which they seek nominal, compensatory, and punitive damages.

## Jurisdiction and Venue

4.     This is a civil and constitutional rights action arising under 42 U.S.C. § 1983 and the Fourth Amendment to the United States Constitution. This Court has jurisdiction under 28 U.S.C. §§ 1331 and 1343.

5.     Venue in this Court is proper under 28 U.S.C. § 1391 because the events giving rise to Plaintiffs' claims arose in this district and division. Defendant Cobb County Police Department is located within this district and division.

## Parties

6.      Plaintiff Katelyn Ebner is 25 years old, was raised in Kennesaw, Georgia, and received her certification from the International School of Skin, Nailcare and Massage Therapy in 2014. She currently works as a waitress at a restaurant where she is often required to work late at night and in back-to-back shifts. She had no arrest record prior to the events at issue in this case.

7.      Plaintiff Princess Mbamara is 27 years old and is currently a student and biology major at Atlanta Metropolitan State College. She was born in Lagos, Nigeria and immigrated to the United States with her family in 1997 at the age of 7, and is applying to become a United States citizen. She is planning to attend medical school.

8.      Plaintiff Ayokunle Oriyomi is 21 years old and was under the age of 21 at the time of the incident. He was born and raised in the town of Powder Springs in Cobb County, Georgia, and is currently a student and an accounting major at Auburn University. He frequently returns home to Powder Springs to visit his family and friends. He had no arrest record prior to the events at issue in this case.

9.      Plaintiff Brittany Penwell is 21 years old and was under the age of 21 at the time of the incident. She was born and raised in the town of Blue Ridge, Georgia, and is currently a stay-at-home mom in Ducktown, Tennessee. She used

to visit family in Austell, Georgia on a regular basis, but has not returned to Cobb County after the events of this Complaint.

10.     Defendant Cobb County Police Officer and so-called Drug Recognition Expert (hereinafter "DRE") Tracy "T.T." Carroll is sued in his individual capacity. At all times relevant to the Complaint, Carroll acted under the color of law. The supervisors in his chain of command during the relevant time period were Gregory Lane Johnson, then-Lieutenant Greg Abbott, Major R.C. Sampson, Deputy Chief Ronnie Price, and then-Chief John Houser. Plaintiffs reserve the right to substitute and/or join additional Defendants as new information arises concerning Defendant Carroll's supervision.

11.     Defendant Cobb County is a Georgia municipality subject to suit. The Cobb County Police Department is an instrumentality of Cobb County.

## Factual Allegations

### Katelyn Ebner

12.     On April 7, 2016, at around 11 p.m., Defendant Carroll stopped Ebner in Kennesaw, Georgia for failing to maintain lane because he allegedly noticed that she was not in her lane as she made a left turn at an intersection, on account of her navigating a curve.

13.     After pulling Ebner over, Defendant Carroll proceeded to subject Ebner to a humiliating field sobriety test based on his alleged observation that she had watery eyes late at night. He did not smell marijuana, notice any marijuana paraphernalia, and had no other reason to disbelieve Ebner when she told him that she had never smoked marijuana and that her eyes were watery due to exposure to cleaning fluid from her work shift. At no time did Ebner present a threat to public safety.

14.     Defendant Carroll did not perform the 12-Step DRE Protocol that was ostensibly created for the purpose of detecting whether someone has been driving under the influence of drugs. Instead, he performed a watered-down version of the test and arrested Ebner for driving under the influence of drugs.

15.     After placing Ebner under arrest, Defendant Carroll told Ebner that "Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs," and that her refusal would result in the suspension of her driver's license for at least one year. Both during and after her arrest, Ebner was confused, intimidated, and distressed. It was unclear to Ebner whether she was being arrested for a crime, she knew she had done nothing wrong,

and she reasonably felt she had no choice but to agree to an invasive blood draw in the hopes that she could be set free right away and be done with this ordeal.

16.     Afterwards, Ebner was taken to the police station. Although the DRE Protocol requires that a drug evaluation be done in a closed and controlled environment, Defendant Carroll did not perform any DRE evaluation on Ebner once she was taken to the police station.

17.     Ebner was held in jail all night for about 10 hours and was not released until the morning.

18.     At no point did Officer Carroll obtain a warrant or attempt to obtain one.

19.     Ebner's blood draw results returned negative for marijuana.

20.     Four months later, the prosecutor filed a dismissal of Ebner's DUI-drug charge.

## Princess Mbamara

21.     On March 25, 2016, at around 11 p.m., Defendant Carroll stopped Plaintiff Princess Mbamara in Mableton, Georgia, a town in Cobb County, for failing to maintain her lane because he allegedly noticed that she was not in her lane when she merged onto a different roadway.

22.     After pulling Mbamara over, Defendant Carroll proceeded to subject Mbamara to a humiliating field sobriety test based on his alleged observation that she had bloodshot eyes late at night. He did not smell marijuana, notice any marijuana paraphernalia, and had no other reason to disbelieve Mbamara when she told him that she had never smoked marijuana and that she was lost and looking for directions. At no time did Mbamara present a threat to public safety.

23.     Defendant Carroll did not perform the 12-Step DRE Protocol that was ostensibly created for the purpose of detecting whether someone has been driving under the influence of drugs. Instead, he performed a watered-down version of the test and arrested Mbamara for driving under the influence of drugs.

24.     After placing Mbamara under arrest, Defendant Carroll told Mbamara that "Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs," and that her refusal would result in the suspension of her driver's license for at least one year. Both during and after her arrest, Mbamara was confused, intimidated, and distressed. It was unclear to Mbamara whether she was being arrested for a crime, she knew she had done nothing wrong, and she reasonably felt she had no choice but to agree to an

7

invasive blood draw in the hopes that she could be set free right away and be done with this ordeal.

25.     Afterwards, Mbamara was taken to the police station. Although the DRE Protocol requires that a drug evaluation be done in a closed and controlled environment, Defendant Carroll did not perform any DRE evaluation on Mbamara once she was taken to the police station.

26.     Mbamara was held in jail all night for over 12 hours.

27.     At no point did Officer Carroll obtain a warrant or attempt to obtain one.

28.     Mbamara's blood draw results returned negative for marijuana.

29.     Five months later, the prosecutor filed a dismissal of the DUI-drug charge.

<u>Ayokunle Oriyomi</u>

30.     On June 12, 2016, at around midnight, Plaintiff Ayokunle Oriyomi was stopped in Kennesaw, Georgia, a city in Cobb County, by officer Gregory Lane Johnson for failing to maintain his lane because Oriyomi's car allegedly drifted out of its lane, touched the white line, and then returned back into his lane. Johnson called Carroll to the scene because Carroll was a certified DRE and Johnson suspected Oriyomi of driving while impaired by marijuana.

8

31.    Defendant Carroll did not perform the 12-Step DRE Protocol that was ostensibly created for the purpose of detecting whether someone has been driving under the influence of drugs. Instead, he performed a watered-down version of the test and arrested Oriyomi for driving under the influence of drugs. At no time did Oriyomi present a threat to public safety.

32.    After placing Oriyomi under arrest, Defendant Carroll told Oriyomi that "Georgia law requires you to submit to state administered chemical tests of your blood, breath, urine, or other bodily substances for the purpose of determining if you are under the influence of alcohol or drugs," and that his refusal would result in the suspension of his driver's license for at least one year. Both during and after his arrest, Oriyomi was confused, intimidated, and distressed because he knew that he was innocent and reasonably felt he had no choice but to agree to an invasive blood draw in the hopes that he could be set free right away and be done with this ordeal.

33.    Afterwards, Oriyomi was taken to the police station. Although the DRE Protocol requires that a drug evaluation be done in a closed and controlled environment, Defendant Carroll did not perform any DRE evaluation on Oriyomi once he was taken to the police station.

34.     Oriyomi was held in jail all night for about 9 hours, and was not released until the morning.

35.     At no point did Officer Carroll obtain a warrant or attempt to obtain one.

36.     Oriyomi's blood draw results returned negative for marijuana.

37.     The prosecutor eventually filed a dismissal of the DUI-drug charge.

<u>Brittany Penwell</u>

38.     On March 12, 2016, at around 10:30 at night, Plaintiff Brittany Penwell was stopped in Austell, Georgia, a town in Cobb County, by Defendant Carroll for failing to maintain her lane because she allegedly did not drive in a straight line on the roadway.

39.     After pulling Penwell over, Defendant Carroll proceeded to subject Penwell to a humiliating field sobriety test based on his alleged observation that she had bloodshot eyes late at night. He did not smell marijuana, notice any marijuana paraphernalia, and had no other reason to disbelieve Penwell when she told him that she had never smoked marijuana and that she was just driving back home to Tennessee. At no time did Penwell present a threat to public safety.

40.     Defendant Carroll did not perform the 12-Step DRE Protocol that was ostensibly created for the purpose of detecting whether someone has been driving

under the influence of drugs. Instead, he performed a watered-down version of the test and arrested Penwell for driving under the influence of drugs.

41.     Both during and after her arrest, Penwell was confused, intimidated, and distressed. It was unclear to Penwell whether she was being arrested for a crime, she knew she had done nothing wrong, and she reasonably felt she had no choice but to agree to an invasive blood draw in the hopes that she could be set free right away and be done with this ordeal.

42.     Afterwards, Penwell was taken to a facility for a blood draw and then to the police station. Although the DRE Protocol requires that a drug evaluation be done in a closed and controlled environment, no one performed any DRE evaluation on Penwell either at the facility or the police station.

43.     Penwell was held in jail all night and into the next day, and was not released until 11 p.m. the next day—over 24 hours after she was stopped on the road.

44.     At no point did Officer Carroll obtain a warrant or attempt to obtain one.

45.     Penwell's blood draw results returned negative for marijuana.

46.     Eventually, the prosecutor filed a dismissal of the DUI-drug charge.

*     *     *

11

47.     Defendant Carroll was never reprimanded or disciplined for failing to follow DRE Protocol or for making these arrests.

48.     Defendant Carroll's pattern and practice of enforcing DUI-drug infractions was to arrest an individual based on nothing more than a hunch, which would be invariably ratified by the results of an ad hoc smattering of tests he administered which were divorced from any rigorous methodology and were without the foundational underpinning necessary to amount to legal justification to arrest.

49.     Defendant Carroll's pattern and practice was to deviate from the standard battery of tests set forth in the DRE Protocol—which themselves have never been validated or vetted as a means to reliably detect impairment from marijuana or any other kind of drug.

50.     Gregory Lane Johnson, then-Lieutenant Greg Abbott, Major R.C. Sampson, Deputy Chief Ronnie Price, and then-Chief of Police John Houser were aware and supportive of Defendant Carroll's deviation from the standard DRE Protocol.

51.     After Plaintiff Ebner was arrested for purportedly being under the influence of marijuana, she filed a complaint with the Cobb County Police Department about the incident. After review by Gregory Lane Johnson, then-

Lieutenant Greg Abbott, Major R.C. Sampson, and Deputy Chief Ronnie Price, Ebner's complaint was dismissed as meritless.

52.     The dismissal of Plaintiff Ebner's complaint, and the written justification therefor, constitute a ratification of Defendant Carroll's actions and the reasoning behind his actions. For example, the written report justifying the exoneration of Plaintiff Ebner's complaint against Defendant Carroll found that, based on Defendant Carroll's DRE experience, "there was more than enough probable cause to arrest."

53.     The dismissal of Plaintiff Ebner's complaint, and the written justification therefor, also constitute evidence of an existing policy and practice of DUI-drugs arrests made without legal justification and a misplaced reliance on so-called Drug Recognition Experts, even when they do not follow any of the protocol upon which their supposed expertise is founded.

54.     The report, which was authored by Gregory Lane Johnson, and signed by then-Lieutenant Greg Abbott, Major R.C. Sampson, and Deputy Chief Ronnie Price, continued to state that even if Defendant Carroll had known of the negative results of Plaintiff Ebner's blood test at the time she was arrested, nonetheless there would have been probable cause for her arrest.

13

55.   Cobb County Police Department's officially promulgated policies or unofficial customs or practices have caused or contributed to these violations. Such customs include recklessly bestowing "Drug Recognition Expert" status to officers without proper training and oversight on when to conduct the 12-Step DRE Protocol and how to conduct it.

56.   The Cobb County Police Department has a custom or practice of recklessly allowing officers artificially knighted with "Drug Recognition Expert" status to falsely believe that they have a special and unique ability to detect marijuana use, and their confirmation bias primes officers to see marijuana use where it does not exist. In other words, the way that Cobb County Police Officers such as Defendant Carroll are taught to and do administer their testing for the detection of impairment by drugs is designed to make innocent behavior appear incriminating and to make exculpatory behavior appear irrelevant.

57.   For example, on the Cobb County Police Department-created Driver Impairment form which was completed for each of the Plaintiffs, there are ample opportunities for officers to check boxes corresponding to a variety of supposedly inculpatory eye conditions (i.e. bloodshot, watery, glassy, dilated, constricted) but no means to easily indicate and document that the subject's eyes are normal.

14

58.     The police department also appears to have a custom or practice of recklessly using these bad DUI arrests as an end-run to intimidate arrestees into agreeing to have their blood drawn without obtaining a warrant: in effect, creating a regime of randomized, warrantless blood testing imposed on many innocent drivers, nearly all of whom have failed to maintain lane at some point in their lives. Making matters worse, the Cobb County Police Department recklessly incentivizes officers to maximize the number of DUI arrests regardless of whether those arrests were proper or lead to convictions and recklessly disregarding the impact that their officers' actions may have on innocent people.

59.     The police department has also uncritically embraced the DRE training and protocol which itself is deeply flawed. Among other flaws, the DRE Protocol requires police officers to perform a medical exam, e.g., checking for unusual pulse, eye nystagmus, and muscle tone and identifying whether those are caused by drug use or any number of innocent medical explanations, when their officers lack relevant medical training.

60.     Much of the DRE Protocol has never been rigorously and independently validated.

61.     The Fourth Amendment does not give the police a blank check to employ any means necessary to root out all crimes, anytime, anywhere—especially

when there is no public safety issue involved.  In a battle between the Fourth
Amendment's protection against unreasonable searches and seizures and the
government's zealous desire to aggressively root out all crime even if innocent
people suffer collateral damage in the process, the Fourth Amendment always
wins.

## Causes of Action

## COUNT ONE

*Unlawful Seizure under 42 U.S.C. § 1983 by Plaintiffs Ebner, Mbamara and
Penwell*

62.     After pulling over Plaintiffs Ebner, Mbamara and Penwell for failure
to maintain lane, there was no justifiable basis, or arguable justifiable basis, to
prolong their detention by performing a field sobriety test by the side of the road.

63.     Based on the information known to Defendant Carroll at the time of
the seizure of Plaintiffs, no reasonable officer could have believed that there was a
justifiable basis to perform a field sobriety test.

64.     The illegal seizure of Plaintiffs Ebner, Mbamara and Penwell was the
proximate cause of Defendant Carroll's decision to arrest them.

65.     For the reasons given above, Defendant Carroll's violation was also
caused, in whole or in part, by the Cobb County Police Department's official
and/or unofficial policies, customs, or practices.

16

## COUNT TWO

*False Arrest under 42 U.S.C. § 1983 by all Plaintiffs*

66.    In arresting Plaintiffs and failing to properly perform the DRE Protocol, Defendant Carroll falsely accused them of committing the offenses of driving under the influence of marijuana, and placed them under detention for 9 to 12 hours without probable cause.

67.    In addition, no reasonable officer in Defendant Carroll's position could have believed that probable cause existed to arrest Plaintiffs.

68.    In addition, the DRE Protocol is itself riddled with flaws, based on discredited studies, and irresponsibly entrusts police officers with performing essentially medical or scientific tests.

69.    For the reasons given above, Defendant Carroll's violation was also caused, in whole or in part, by the Cobb County Police Department's official and/or unofficial policies, customs, or practices.

## COUNT THREE

*Unlawful Search and Seizure under 42 U.S.C. § 1983 by all Plaintiffs*

70.    After Plaintiffs were falsely arrested, they were confused, intimidated, and distressed, and each of them reasonably felt compelled to submit to an invasive blood draw so that they may be released as quickly as possible.

17

71.     In addition, no reasonable officer in Defendant Carroll's position could have believed that their "consent" to an invasive blood draw was actually voluntary.

72.     For the reasons given above, Defendant Carroll's violation was also caused, in whole or in part, by the Cobb County Police Department's official and/or unofficial policies, customs, or practices.

## COUNT FOUR

*Malicious Prosecution under 42 U.S.C. § 1983 by all Plaintiffs*

73.     Plaintiffs' criminal prosecutions were initiated by Defendants via a series of Uniform Traffic Citation, Summons, and Accusation forms issued by Officer Carroll.

74.     Plaintiffs were detained pursuant to this initiation of legal process, suffering the loss of liberty.

75.     Plaintiffs further had their blood seized and searched pursuant to initiated legal process.

76.     Plaintiffs' criminal prosecutions were made without probable cause or arguable probable cause.

77.     Such prosecutions terminated in Plaintiffs' favor when the Cobb County prosecutors dropped their DUI charges and submitted motions to enter nolle prosequi.

78.     The dismissals of Plaintiffs' DUI charges are consistent with their innocence of these charges.

79.     As a result of their prosecutions, Plaintiffs suffered the loss of liberty, extensive monetary losses, reputational damages, humiliation, and emotional distress.

80.     In addition, for the reasons stated above, these violations were caused, in whole or in part, by the Cobb County Police Department's official and/or unofficial policies, customs, or practices.

## Prayer for Relief

WHEREFORE, Plaintiffs demand the following:

a)  That this action be tried by a jury;

b)  That judgment be entered in favor of Plaintiffs and against Defendants in an amount to be determined by fair and impartial jurors to the extent allowed by law;

c)  That Plaintiffs be awarded punitive damages against Defendant Carroll;

d)  That Plaintiffs be awarded attorneys' fees under 42 U.S.C. § 1988;

e)  That all costs of this action be taxed against Defendants; and

f)  That the Court award any additional or alternative relief as may be

deemed appropriate under the circumstances.

<div style="margin-left: 40%">

Respectfully submitted,

</div>

this 23rd of October, 2017      s/ Sean J. Young_____

<div style="margin-left: 40%">

Sean J. Young (Ga. Bar No. 790399)
Aklima Khondoker (Ga. Bar No. 410345)
AMERICAN CIVIL LIBERTIES UNION
FOUNDATION OF GEORGIA, INC.
P.O. Box 77208
Atlanta, GA 30357
770-303-8111 (phone)
770-303-0060 (fax)
syoung@acluga.org
akhondoker@acluga.org

Zack Greenamyre (Ga. Bar No. 293002)
MITCHELL & SHAPIRO LLP
3490 Piedmont Road, Suite 650
Atlanta, GA 30305
404-812-4747 (phone)
404-812-4740 (fax)
zack@mitchellshapiro.com

Attorneys for Plaintiffs

</div>

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on October 23, 2017, I electronically filed the First

Amended Complaint with the Clerk of Court using the CM/ECF system, which

constitutes service upon Defendants.

Date: October 23, 2017

s/ Sean J. Young_____

Sean J. Young (Ga. Bar No. 790399)
AMERICAN CIVIL LIBERTIES UNION FOUNDATION OF GEORGIA, INC.
P.O. Box 77208
Atlanta, GA 30357
770-303-8111 (phone)
770-303-0060 (fax)
syoung@acluga.org